[Civ. No. 3186.   Third Appellate District.—December 28, 1926.]

## FRANCES G. LAMBORN, Appellant, v. ERVIN H. LAMBORN, Respondent.

[1] EVIDENCE — SERVICE — HEALTH — ABILITY TO CONTINUE EMPLOYMENT.—It is common knowledge that many people suffering from some ailment, for which they are receiving treatment, continue their employment for considerable periods of time.

[2] DIVORCE — ALIMONY — HEALTH OF WIFE—CAPACITY FOR WORK—EARNINGS—EVIDENCE.—In a proceeding by a divorced husband to obtain a modification of the alimony award, evidence that the former wife had phlebitis, which prevented her following her profession as a nurse, did not require the conclusion on the part of the trial court that she was wholly incapacitated for work or unable to earn money in other fields of labor.

[3] ID. — ALLOWANCE OF ALIMONY INDUCING IDLENESS ON PART OF WIFE — EARNINGS OF HUSBAND. — In awarding alimony, a trial court should not do so in a sum inducing idleness on the part of the former wife, where the former husband is earning wages by daily labor.

[4] ID. — CONSIDERATION OF DESIRE OF PARTIES TO ESTABLISH ANOTHER HOME—EVIDENCE.—Where there are no children involved and the parties are both young, the trial court may take into consideration, in awarding alimony, the possibility, probability, and the desirability of allowing the respective parties to establish another and, perhaps, more congenial home.

[5] ID.—DESIRE OF HUSBAND TO CONTRACT FUTURE MARRIAGE—EVIDENCE—DISCRETION.—In considering an application by the former husband for the modification of an alimony award, it is not an abuse of discretion for the trial court to admit testimony and consider proof relative to future marriage.

---

[6] ID.—MODIFICATION OF ALIMONY AWARD—NECESSITIES OF WIFE.—
In modifying an alimony award upon the application of the
former husband, the trial court is justified in considering the
wish of the husband to remarry and that he should not be so
crippled in his finances that another home may not be estab-
lished, unless it appears to the court that the necessities of the
former wife compel such a course.

[7] ID. — ABILITY OF WIFE TO BECOME INDEPENDENT — EVIDENCE —
EQUITY—DISCRETION—APPEAL.—Whether a divorced wife is able
to become independent, or, at least, to make a reasonable effort
to attain that end, are equitable matters for the trial court to
weigh and consider, in a proceeding by the former husband to
secure a modification of the alimony award, and unless there
appears a manifest abuse of discretion, the appellate court ˙has
no authority to interfere.

[8] ID.—SECTION 139, CODE OF CIVIL PROCEDURE—MEANING OF WORD
"CIRCUMSTANCES" — ALLOWANCE TO WIFE—EVIDENCE. —The word
"circumstances" as used in section 139 of the Code of Civil
Procedure, which provides that where the divorce is granted for
an offense of the husband, the court may compel him to make
suitable allowance for the wife during her life, or for a shorter
period as may seem just, having regard to the "circumstances"
of the parties, includes practically everything which has a legiti-
mate bearing upon the present and prospective matters relating
to the lives of both parties.

[9] ID. — CRUELTY — ALIMONY — CIRCUMSTANCES OF HUSBAND — EVI-
DENCE.—The mere fact that the wife is granted a divorce on the
ground of cruelty does not necessarily brand the husband as one
whose means and circumstances should not be taken into con-
sideration in awarding alimony.

[10] ID.—ALLOWANCE OF ALIMONY—DISCRETION—APPEAL.—In award-
ing alimony there is necessarily a latitude of discretion to be
exercised by the trial court, and it must be made to appear that
the trial court has abused its discretion before an appellate court
is authorized to interfere.

---

(1, 2) 19 C. J., p. 324, n. 92; 23 C. J., p. 146, n. 52, p. 147, n. 53.
(3) 19 C. J., p. 264, n. 51.   (4) 19 C. J., p. 249, n. 51 New.  .(5) 19
C. J., p. 277, n. 6 New.   (6) 19 C. J., p. 277, n. 6 New.   (7) 19
C. J., p. 274, n. 59, 61.   (8) 11 C. J., p. 768, n. 26, 27, 29, 31;
19 C. J., p. 264, n. 51.   (9) 19 C. J., p. 252, n. 4 New.   (10) 19
C. J., p. 271, n. 21, p. 274, n. 59, 61.

9. Earning capacity or prospective earnings of husband as basis
of allowance of alimony, note 6 A. L. R. 192.
10. See 1 Cal. Jur. 964.

APPEAL from an order of the Superior Court of Alameda County reducing amount of alimony. Dudley Kinsell, · Judge. Affirmed.

· The facts are stated in the opinion of the court.

Dixon L. Phillips and Esther B. Phillips for Appellant.

David D. Oliphant, Jr., and Hayes, Oliphant & Dukette for Respondent.

PLUMMER, J.—This is an appeal by the plaintiff from an order of the superior court of the county of Alameda made and entered on the sixth day of June, 1921, reducing the amount of alimony from $45 to $30 per month, the former being the amount allowed in the interlocutory decree of divorce entered in said cause on the nineteenth day of May, 1919, and continued in effect in the final decree of divorce made and entered on the twenty-first day of May, 1920. The order appealed from bears date the sixth day of June, 1921. The bill of exceptions herein was settled and allowed by the judge of the superior court on the twenty-seventh day of September, 1921. The printed transcript on appeal was certified to by the county clerk of Alameda County and *ex-officio* clerk of said court on the ninth day of August, 1924. Appellant's reply brief in this cause was filed on the twenty-eighth day of December, 1925. The appeal having been taken to the supreme court was by the supreme court in 1926 transferred to this court for hearing and determination and was placed upon the calendar for hearing on December 7, 1926. Whether the issues involved have now become moot after the lapse of five and one-half years, we are unable to ascertain from the record, but whatever the cause of the delay in reaching a final decision in this matter, the dates which we have set forth disclose the fact that whatever laches there may have been in reaching a final conclusion, they are not attributable to the district court of appeal.

The order reducing the alimony from $45 to $30 per month was made upon the application of the defendant and after hearing, wherein testimony orally and by way of affidavits was admitted. The transcript shows that the

respondent herein was then of the age of thirty-three years, was an employee of the Atchison, Topeka and Santa Fe Railway, earning a sum slightly less than $160 per month; that the respondent desired to marry again; that the plaintiff in said action was able to earn money for her own support; that the decree was oppressive and deprived the petitioner herein of money for his own needs, and that the health of the plaintiff, the appellant in this proceeding, and her professional training enable her to earn money for her own support.

The testimony taken upon the hearing shows that the defendant was earning the sum per month hereinbefore stated, that the plaintiff was a trained nurse, but owing to the fact that she was suffering from an ailment known as phlebitis, she was unable to follow her profession or calling as a trained nurse, and that she was unable to remain upon her feet for any considerable length of time. In other particulars the record would lead to the conclusion that the appellant herein was an ordinary healthful person. The record also discloses that during the examination, and while the appellant was upon the witness-stand, the trial court inquired whether the appellant had at any time since the month of May, 1919, endeavored to find employment, to which the appellant answered "No." The appellant was then asked by the court why she had not sought employment, to which the appellant replied: That she did not think it was necessary; that Judge Brown had so stated at the trial and she did not feel like doing so; that since February, 1920, she had been incapacitated from following her profession as a trained nurse because of phlebitis, and, further, in reply to a question by the trial court as to why she had not sought other employment, the appellant stated that she had not done so for the reason that she did not feel like it. The affidavits of the physicians, who testified in the matter, were simply to the effect that the ailment mentioned incapacitated the plaintiff from her professional work as a trained nurse. There is also an affidavit by a sister of the appellant in this suit introduced in evidence to the effect that the appellant had been ill for some months.

The trial court had the parties before it, had the benefit not simply of the affidavits to which we have referred,

but of the personal presence of the plaintiff and the defendant, and could judge from the appearance of the plaintiff as to whether she was or was not physically able to earn any part of the money necessary for her own support. The replies of the appellant to the questions of the trial court upon the cold record indicate at least a lack of any real disposition on the part of the appellant to earn any part of her own living.

[1, 2] Our attention is called to the fact that one of the physicians whose affidavit was read in evidence testified that he had treated the appellant for a number of months. This, however, does not require the conclusion that the plaintiff was wholly incapacitated for work. We think it is common knowledge that many people suffering from some ailment for which they are receiving treatment continue their usual employment for considerable periods of time, nor is an ailment which incapacitates a person for a particular line of work a sufficient reason why a trial court should come to the conclusion that such person is not able to earn money in other fields of labor. To determine this question the trial court must necessarily have some knowledge of the intellectual capacity of the persons in question, their intelligence, their power of adaptability, none of which can properly be considered by this court upon appeal. The presence of the parties involved is the essential equasion in order to approximate a conclusion as to whether anyone is so endowed as to capacitate him to perform some labor, and, at least, make a reasonable effort toward self-support.

[3] We agree with the substance of appellant's argument that trial courts should not be niggardly in the matter of awarding alimony and we also coincide with the effect of respondent's insistence that where the ex-husband is earning wages by daily labor, a trial court, in awarding alimony, should not do so in a sum inducing idleness on the part of the ex-wife. [4] Where there are no children involved and the parties are both young in years, we think the trial court may take into consideration, in awarding alimony, the possibility, probability, and the desirability of allowing the respective parties to establish another and, perhaps, more congenial home. [5] The prevalence of divorces may well call for judicial sup-

port of the institution of marriage and we cannot say it is an abuse of discretion for a trial court to admit testimony and consider proof relative to future marriage. While the mere desire of a party to remarry may not, in and of itself, be a sufficient ground for reducing the award of alimony, it is a matter to be taken into consideration, when determining whether the other party has or has not evinced a willingness to earn something toward her own support. [6] In other words, we think the trial court was justified in considering the laudable wish of the respondent to remarry and that he should not be so crippled in his finances that another home may not be established, unless it appears to the trial court that the necessities of the former wife compelled such a course. The change in the industrial world which has taken place in the last few years presents to the trial court many matters for consideration and calls for the exercise of its discretion in awarding alimony. Thousands of women and girls are now employed, where formerly men and boys were once found. The employment of women in all lines of work is now so general that it may almost be said to be a mark of distinction for a woman to be self-supporting. [7] Whether the plaintiff is sufficiently able to enter this class and become independent, or, at least, to make a reasonable effort to attain that end and so relieve the opposite party from the monthly draft upon his wages, were all equitable matters for the trial court to weigh and consider, and unless there appears a manifest abuse of discretion, this court has no authority to interfere.

[8] Section 139 of the Civil Code provides that where the divorce is granted for an offense of the husband, the court may compel him to make such suitable allowance for the wife during her lifetime, or for a shorter period as may seem just, having regard to the circumstances of the parties respectively, and the court may, from time to time, modify its orders in these respects.

We do not need to go into an extensive definition of the word "circumstances," but we think it includes practically everything which has a legitimate bearing upon the present and prospective matters relating to the lives of both parties. In 11 C. J. 768, the word is thus defined: "Proof, evidence, actually existing facts, as distinguished from

opinions and motives, the surrounding facts, means, influence, etc., especially as related to one's support and way of living; circumstances appearing at the trial, circumstances of the parties, etc.''

[9] The mere fact that the appellant was granted a divorce in this action does not absolutely brand the defendant as one whose means and circumstances should not be taken into consideration. It is true that the decree was granted on the alleged ground of cruelty. A reference to the complaint, which is made a part of the record in this proceeding, shows that the alleged cruelty is based upon the following allegations: ''That about three times a week the defendant would angrily, etc., say to the plaintiff that she was uncleanly in her person and about her home; that she was a bad housekeeper and that defendant became angry about once a week because the plaintiff went to services at the church of which she was a member and would not speak to her for some days thereafter and that the defendant did not desire to have any children.'' (No criminal acts intimated.)

We are not called upon to decide whether such matters amounted to cruelty, as defined by the code, so as to entitle one to a decree of divorce, but they are certainly not sufficient to show an abandoned and malignant heart, justifying a trial court in awarding alimony that would be in anywise oppressive.

[10] From an examination of the transcript in this cause, we cannot say that there has been any legal abuse of discretion in modifying the order awarding alimony. Whether the court did or did not err in judgment is entirely beside the question. The same is true of whether we do or do not think that the court might properly have allowed the original order to remain unmodified. Necessarily there is latitude of discretion to be exercised by the trial court, and we cannot say that this latitude has been exceeded or the discretion abused. Our inquiry can extend no further. (2 Cal. Jur. 896; 1 Cal. Jur. 964 et seq.; *Dickerson* v. *Dickerson,* 108 Cal. 351 [417 Pac. 475]; *Nave* v. *Nave,* 35 Cal. App. 27 [169 Pac. 253]; *Gorman* v. *Gorman,* 134 Cal. 378 [66 Pac. 313]; *White* v. *White,* 73 Cal. 105 [14 Pac. 393]; *Stewart* v. *Stewart,* 156 Cal. 651 [105 Pac. 955]; *Soule* v. *Soule,* 4 Cal. App. 97 [87

Pac. 205].)  Other cases might be cited, but they all announce the same ruling, i. e., that it must be plainly made to appear that the trial court has abused its discretion before an appellate court is authorized to interfere.  The order appealed from is affirmed.

Preston, J., *pro tem.*, and Finch, P. J., concurred.