[Civ. Nos. 29048, 29690.   Second Dist., Div. Two.   Nov. 14, 1966.]

JANICE MODGLIN, Plaintiff and Appellant, v. F. RENE MODGLIN, Defendant and Respondent.

412

Ellis J. Horvitz for Plaintiff and Appellant.

Munger, Tolles, Hills & Rickershauser and Christian E. Markey, Jr., for Defendant and Respondent.

ROTH, P. J.—Janice and Rene Modglin were married on November 6, 1948. They were divorced on November 25, 1959. There were two daughters of the marriage. At the time of the divorce, Janice received custody of the two children and an award of $125 per month child support for each child. She also received $200 per month alimony for 12 months; thereafter, $1.00 per month.

On January 3, 1964, Rene responded to an order to show cause requesting an increase in child support and alimony, and seeking attorneys' fees and costs. Janice contended more funds were required for the support of the children, now teenagers, and that more room and new furniture were required for the family of three, and further, that she was in need of substantial dental attention for herself and showed in addition, that her present net income, approximately $3,600 per annum, as a nurse, was lower than it was at the time of the divorce.

Rene, a physician, has remarried and adopted his present wife's child from a former marriage. He is sole owner of a chain of medical laboratories known as Bio Laboratories, from which he derives the greater part of his income. He is also a salaried staff member of Patton State Hospital. Rene's net income was shown to be approximately $36,000 per annum.

The trial judge increased the amount of child support to $250 per month for each child, and awarded $500 attorneys' fees. The alimony of $1.00 to Janice was not increased.

The order for child support is not challenged by either party.

The first of these appeals is from those parts of the order which did not increase the alimony and which awarded $500 attorneys' fees. Janice contends that the court prejudged her right to an alimony increase and that the hearing was summary and inadequate for the proper presentation of her case.

In a separate order to show cause, appeal No. 29690, Janice sought an allowance for attorneys' fees and costs to enable her to appeal from those portions of the first order heretofore noted. The second appeal is from the order denying her request for fees and costs of appeal.

Evidence on Janice's financial condition and on Rene's ability to pay was admitted. Much of this information was received in written form as answers to interrogatories and affidavits. The trial judge indicated that he did not wish to have repeated in oral testimony information already before the court in writing. Appellant, however, was given an opportunity to testify and present all relevant facts, and further, to examine all witnesses she had produced.

Appellant's testimony was brief. Respondent's accountant was fully examined. Appellant did not call the present Mrs. Modglin, although she was present in court and testimony showed that Mrs. Modglin handled the doctor's personal finances.

The trial court had before it the interlocutory decree dated November 25, 1959. This decree made a detailed division of all property pursuant to a stipulation of the parties. Substantially all of the property, other than husband's pathology laboratory located in San Bernardino, a 1957 Thunderbird automobile and unenumerated personal property in possession of husband, was awarded to appellant.

The record before us does not indicate nor suggest that the hearing was inadequate or that the court prejudged the issue of alimony.

Appellant's declaration in support of the order to show cause admits that her income is $333 per month and that her current expenditures for self and two children are $584 per month. In this declaration she shows item by item how such expenditures will be increased in the future to $1,145 per month. With the increased allowance for the children she will have $833 per month. We must assume the trial judge analyzed each item. There is no showing of physical or mental ill health or any dire circumstances on part of appellant. The interlocutory decree specifically provides for medical and dental care of the children, in addition to any fixed amounts allowed for their support.

The trial court has wide discretion in making an award of alimony, or in modifying a prior award. In *De Santo* v. *De Santo,* 162 Cal.App.2d 126, the court says at p. 128 [328 P.2d 463]:

"It is the general rule that in a divorce action the trial court is given a wide discretion in determining the amount of alimony to be awarded to the wife, having regard for the circumstances of the respective parties, and a reviewing court is limited to the question whether the trial court abused its discretion in making the order."

In *Baldwin* v. *Baldwin,* 28 Cal.2d 406, the court says at p. 413 [170 P.2d 670]:

" 'Before the appellate courts will interfere, it must be made clearly and affirmatively to appear upon the face of the entire record in the case that this discretion has been abused.' "

In *Newbauer* v. *Newbauer,* 95 Cal.App.2d 36, the court says at p. 40 [212 P.2d 240]:

"That the members of this court might have been more liberal is not the test. The discretion was the trial judge's, not ours; and we can only interfere if we find that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he did. (*Fillmore* v. *Fillmore,* 74 Cal.App.2d 418 [168 P.2d 725]; *Cozzi* v. *Cozzi,* 81 Cal.App.2d 229 [183 P.2d 739]; *Furniss* v. *Furniss,* 75 Cal.App.2d 138 [170 P.2d 486].)"

The record before us shows, that the interlocutory judgment insofar as its property and support provisions are concerned, was the result of stipulation in open court in marital litigation in which there was a complaint and a cross-complaint. It shows further that respondent, in order to meet certain of the obligations required of him by the judgment,

was compelled to borrow money from appellant and appellant was required to lend it to him. The loans were made and have since been repaid.

We have no right to assume that the parties when they made their stipulation for alimony of $200 per month for one year, and $1.00 per month thereafter, did not know precisely what they were doing. We have no way of knowing what multitude of factors, or even what single consideration, entered into those stipulations. There is no suggestion, even remote, that any of them were illegally induced.

In these circumstances, even though respondent's business has spread beyond the County of San Bernardino and his business and net earnings are probably geometrically increased over and above what they were at the time of the interlocutory decree, we do not feel justified, on the showing here made, in reopening the divorce litigation, and in effect setting aside a bargain originally made in open court under the supervision of a superior court judge.

Viewing the record before us ". . . most favorably in support of the trial court's actions," we cannot say ". . . no judge could reasonably have made the order" before us. Insofar as the alimony feature of the order is concerned, we do not disturb it.

Attorneys for appellant submitted an accounting and request for fees to the trial judge. When the amount was fixed, counsel for appellant said ". . . the legal fees are disproportionate to the . . . work that was generated." It does appear without contradiction in the record that appellant's attorney did approximately 40 hours of work, aside from the time spent in trying the O.S.C. However, ". . . [T]he critical question is not whether the attorney ought to be paid but whether the wife has need of the money to maintain the proceedings in question." (*Cope* v. *Cope*, 230 Cal.App.2d 218, 236 [40 Cal.Rptr. 917] ; *Straub* v. *Straub*, 213 Cal.App.2d 792, 799 [29 Cal.Rptr. 183].) Such an award is not a matter of right. (*Chapman* v. *Tarentola*, 187 Cal.App.2d 22, 25 [9 Cal.Rptr. 228].)

The question of the reasonableness of the order for $500 attorneys' fees is also addressed to the trial court's discretion.

The record justifies a more substantial allowance. We cannot say however that ". . . no judge could reasonably have made the order" (*Newbauer* v. *Newbauer, supra,* p. 40). We cannot say that there is a clear showing of abuse of discretion.

(*Primm* v. *Primm,* 46 Cal.2d 690, 696 [299 P.2d 231]; *Wilder* v. *Wilder,* 214 Cal. 783, 785 [7 P.2d 1032].) It may well be that the trial judge was of the opinion that much of the time spent by counsel was on the alimony aspect of the O.S.C., and that, in his opinion, there was no showing to disturb a bargain made and approved in open court.

We turn now to the order denying fees and costs on appeal. In *Wittman* v. *Superior Court,* 19 Cal.App.2d 734, the court says at p. 736 [66 P.2d 180]:

"The law is well settled . . . , that the right of a defeated wife to prosecute at the husband's expense her appeal from a judgment . . . rests in the sound discretion of the trial court, and that therefore its action denying an application therefor will not be disturbed save when it clearly appears that such discretion has been abused. [Citations]."

■ The record does pose a genuine question as to the alimony rights of appellant. It also shows in view of very limited income of appellant, the generous net income of respondent, and the amount of work performed, that the allowance of attorneys' fees was on the frugal side. The question of abuse of discretion is often sensitive. On the record before us, it is not difficult to understand that appellant felt in good faith that the orders with which she is dissatisfied, should be reviewed. In these circumstances, language of the court in *Hunter* v. *Hunter,* 202 Cal.App.2d 84, at p. 93 [20 Cal.Rptr. 730], is apposite:

"To tell a woman who wishes in good faith to appeal a judgment in a divorce action and who is without funds to pay necessary counsel fees that no such fees will be allowed . . . is practically equivalent to denying her the right to appeal unless her attorney is willing to act without compensation or for the mere possibility that some attorney's fee may be awarded later. In *Norris* v. *Norris,* 50 Cal.App.2d 726, 735 [123 P.2d 847], where a similar question was being considered, the court dealt with the facts as follows:

" 'From appellant's affidavit and the evidence in the record it appears to be uncontroverted that appellant did not have the funds necessary to prosecute the appeal or to pay attorneys' fees, that respondent is able to pay a reasonable sum therefor, and that the appeal was taken in good faith and presented debatable questions which were not without substantial merit or controversy. Under these circumstances it must be held that the court erred in denying appellant's application for a reasonable allowance for costs and counsel fees on appeal.' (See also *Coleman* v. *Coleman,* 23 Cal.App. 423, 426

[138 P. 362]; *Weil* v. *Weil*, 37 Cal.2d 770, 791 [236 P.2d 159].)"

The order in appeal No. 29048 is affirmed.

The order in appeal No. 29690 is reversed.

Since the order in appeal No. 29690 could not have been properly reviewed without the record in appeal No. 29048, costs of appeal in both cases are awarded to appellant.

FLEMING, J.—I concur.

It is not my understanding that the alimony provisions of a final judgment of divorce settling the property rights and obligations of the parties are, like stock market quotations, subject to modification with every fluctuation, for better or worse, in the fortunes of the parties concerned. I do not believe that under the guise of increased alimony a former spouse is entitled to share a new-found prosperity achieved by an ex-partner with whom relations have long since been legally severed. Such a theory would put the rights of an ex-spouse on a par with those of a current spouse, would suggest that the ex-spouse is legally entitled to support at whatever style of living the former spouse may thereafter achieve, and would imply that an ex-spouse can continue to reap where for many years he or she has not sown. This flies in the face of our basic concept that prosperity in the matrimonial household is the result of the joint efforts of both spouses—in this case those of the ex-husband and his present wife—and that the parties who make a success of their conjugal venture are the ones entitled to enjoy its fruits.

HERNDON, J.—I concur in the reversal of the order denying appellant the award of attorneys' fees necessary to the prosecution of this appeal. For two reasons, however, I would also reverse the order denying appellant's prayer for a modification of the alimony provision of the judgment. My reasons are these:

(1) On the basis of the undisputed facts in this case, I would hold that the order under consideration is so clearly unreasonable and so unjust to the appellant and to the two children of the parties as to amount to a manifest abuse of discretion.

(2) It appears to me from my reading of the transcript of the hearing that appellant is correct in her contention that the trial court rather clearly indicated throughout the proceeding that no consideration was being given to her prayer for a

modification of the alimony order and that *"the only question"* to be decided was the proper amount to be allowed for child support. In my view a substantial issue must be given judicial consideration before such issue can be decided by a proper exercise of discretion.

Before undertaking further to develop my views, I would emphasize that I am in hearty accord with all the basic rules of law stated in the main opinion and particularly with the rule that orders of this kind should not be disturbed on appeal in the absence of a record which convincingly shows a clear abuse of discretion. Moreover, I think it is generally understood and agreed that alimony provisions should not be "subject to modification with every fluctuation, for better or for worse, in the fortunes of the parties concerned."

The guiding and controlling considerations in deciding whether and to what extent an alimony order should be modified are too well known to require more than brief restatement. In the instant case, the very fact that the parties stipulated to the continuation of a nominal award, obviously made for the sole purpose of retaining jurisdiction, plainly shows their mutual understanding that at some time in the future appellant might seek and obtain a modification provided, of course, that she could make the necessary showing of need, changed circumstances, etc.

A brief review of the background of the instant proceedings will be helpful in placing the matter in proper perspective.

Respondent F. Rene Modglin, now 46 years of age, is a physician and surgeon specializing in pathology. He received his license to practice in June of 1948, and he married appellant Janice Modglin in November of that year. Two children, both girls, were born of this marriage. They are Michelle and Suzanne whose present ages are approximately 15½ and 14 years, respectively.

These parties separated in October of 1957, almost 9 years after their marriage. The children were then 6½ and 5 years of age, respectively. In September of 1958, Janice filed her action for divorce and on November 25, 1959, she was granted an interlocutory judgment by which she was awarded the custody of the two children. Respondent was ordered to pay her child support in the amount of $125 per month for each child and $200 per month alimony for a period of 12 months and thereafter the sum of $1.00 per month until further order.

The small amount of community property owned by the parties was divided pursuant to stipulation. Appellant dis-

posed of the property received by her and the proceeds have been expended. At the time of the hearing she owned no property other than her household furnishings and was entirely dependent upon her earnings as a nurse.

On December 29, 1962, Dr. Modglin married his present wife who had been in his employ for several years and thereafter adopted Nancy, her daughter by her former marriage. This child, now 11 years of age, resides with Dr. Modglin and his present wife.

On January 3, 1964, appellant filed her declaration seeking a modification of the provisions of the interlocutory judgment with respect to child support and alimony. After certain discovery proceedings had been completed, the order to show cause came on for hearing on June 24, 1964. There is no significant conflict in the evidence and the essential facts are not disputed.

Dr. Modglin is the sole owner of a business enterprise known as Bio Laboratories operating a chain of medical laboratories. The gross income of this business during the year preceding the hearing amounted to some $325,000. Dr. Modglin's net income from Bio Laboratories amounted to approximately $36,500.[1]

In addition to his income from Bio Laboratories, Dr. Modglin received a salary of $17,000 from the Patton State Hospital. Dr. Modglin testified that his net income for the calendar year preceding the hearing was $53,500 before taxes. The federal and state income taxes paid upon this income totaled approximately $16,000 so that his *net* income, *after taxes,* was $37,500 or $3,125 per month of *net spendable* income.

Appellant testified that she was working as a staff nurse at U.C.L.A. Medical Center and that her take-home pay for that work was slightly less than $300 per month.[2] Appellant and

---

[1]The increasing value of respondent's proprietary interest in Bio Laboratories and the dramatic increases in respondent's income therefrom are shown by the following table:

|  | Gross Income | Gross Expense | Net Income |
|---|---|---|---|
| 1960 | $ 97,899.45 | $ 93,230.46 | $ 4,668.99 |
| 1961 | 138,796.08 | 132,854.77 | 5,941.31 |
| 1962 | 226,180.06 | 206,026.83 | 20,153.23 |
| 1963 | 325,441.71 | 288,967.34 | 36,474.37 |
| 1964 | 100,790.02 | 72,442.27 | 28,347.75 (first quarter) |

[2]Subsequent to the filing of her affidavit for the order to show cause appellant's pay as a nurse had been reduced from the $333 figure stated therein to less than $300 at the time of the hearing.

the two daughters are living in a two-bedroom home which commands the relatively modest rental of $140 per month.

Appellant testified that she was in immediate need of extensive dental repair work which she was unable to have done because she was without means to pay $1,500, the cost estimated by her dentist. Appellant owns no property and has no source of income other than her wages as a nurse and the amounts which she receives from respondent as child support.

In other words, Dr. Modglin's net spendable income is more than 10 times that of the appellant. In addition, Dr. Modglin and his present wife were driving late-model Cadillac automobiles. These automobiles were provided and maintained and all gasoline and oil used in their operation were supplied by Bio Laboratories as tax deductible items of expense so that Dr. Modglin's net income was not even burdened with the usual, and not insubstantial, costs of acquiring, maintaining and operating expensive automobiles for family use.

Respondent testified that the 1963 Beechcraft six-seated airplane, provided and maintained for him at the tax deductible expense of Bio Laboratories, was used exclusively for business purposes. It appears also that respondent and his present wife have taken trips to such places as London, Brussels, Paris and Hawaii. Although the record is not entirely clear, I believe it sufficiently appears that some, if not all, of these trips were treated and expensed as business expense of the Bio Laboratories.

The striking disparity in the incomes of appellant and respondent are matched by the rather dramatic differences in the homes and in the ways of living of the respective parties. Dr. Modglin testified that he and his present family live in a recently built three-bedroom home equipped with a swimming pool. The cost of this home including the land, exclusive of furnishings, was approximately $62,000. In her testimony appellant described the accommodations of her two-bedroom home as follows:

"Q. By Mr. Brandeis: Now, you have an item on here to indicate you would like to spend more money on furniture. You presently estimate $5.00 a month. You would like to spend $30 a month. Actually, what is the condition of the furniture? A. There is not one solid piece of furniture in the house outside of a piano. Q. How old is the furniture? A. The furniture is about 12 years old, but all of the springs are broken in every piece of upholstered material. There is a scanty amount, and there are no rugs on the floor except in the

living room. Q. Do your two daughters share a room? A. They do. Q. And do they have to share any of the furniture in the room? A. They have one old unpainted chest of drawers that they have to share and put all of their clothing in. Q. Now, there has been tension between your children in the past? A. Yes. Q. Do you, as a mother, feel that if they had their own rooms properly furnished that this would help the situation? A. It would certainly— Mr. Markey: Just a minute. For the record, I object to the question as invading the scope and purview of the Court. It is a question that runs to the issues and not a question of fact. The Court: Well, let's say this for the record. Both of the girls said they wanted separate rooms, that one of the causes of their friction is because they are about the same age, too, and they are very close together. But anyway—''

After reading and reflecting upon the record in this case I have a strong conviction that the orders here under review are both grossly unjust and ill-advised from the standpoint of all of the persons whose lives and interests are so directly and so greatly affected. It seems to me more than likely that in the course of time respondent himself would be likely to regret the probable and foreseeable effects upon the children.

It requires no unusual intelligence, insight or imagination to perceive the feelings of dissatisfaction and the emotional conflicts which almost inevitably would result from the contrast which these two children would observe when they returned to their own home after their visits to that of their father.

It is obvious that the next five or six years will be the most critical in the future lives of these two children. This will be the period of their transition from adolescence to adulthood. During this critical period, barring unforeseeable reverses, Dr. Modglin will be well able to provide appellant and his daughters with the means to live in far better circumstances and to enable appellant to devote more of her time and energy to the meeting of the obvious demands of her present situation.

The decision in *Brawman* v. *Brawman*, 199 Cal.App.2d 876 [19 Cal.Rptr. 106], constitutes a sufficient brief in support of appellant's position here. It analyzes most of the pertinent California precedents and states the common sense considerations which are controlling. In reversing an order denying the appellant wife any award of alimony, the appellate court made observations which are equally applicable in the case at bench. The respondent husband in that case was a lawyer with a net income from his practice of approximately $24,000 per

annum. By the terms of the judgment in that case the wife received by way of division of the community property various items of property of substantial value including a home and household furniture and the sum of $10,000 which the husband was required to pay at the rate of $1,000 per annum. Respondent husband was also ordered to pay the wife $200 per month each for the support of two children. Referring to these payments the court observed at page 883:

"(Respondent, in his brief, computes the child support payments as though they are the income of the wife. Obviously, they are not, and should not be so regarded. [Citation.] Since appellant must legally apply such payments to feed, clothe and educate them in a manner befitting the children of a leading attorney of the community, she cannot legally divert the money for her own benefit.) She will have to seek and obtain employment to meet the necessities of living. This, considering her obligation to care for, guide and supervise a teenage daughter and an 8-year-old son, and further considering the accustomed antedivorce standard of living of this family, she should not be required to do. [Citation.]"

The majority opinion is commendably forthright in recognizing as it does that the record in this case "does pose a genuine question as to the alimony right of appellant" and that it shows her need for an allowance of fees "in view of the limited income of appellant and the generous income of respondent."

To me it is fairly apparent from the language of the majority opinion that my colleagues share the belief that an order granting appellant an award of reasonable alimony would have been in the interest of justice. It is clearly implied, I think, that if the judges of this court were permitted to assume the position of the trial judge and to exercise the discretion vouchsafed to him, we would make a substantially different order. But how unfair or unreasonable must an order appear to be before we characterize it as an abuse of discretion? It becomes, I submit, a matter of degree.

I am completely sympathetic with the general rule as stated in *Baldwin* v. *Baldwin,* 28 Cal.2d 406 [170 P.2d 670], that "[b]efore the appellate courts will interfere, it must be made clearly and affirmatively to appear on the face of the entire record in the case that [the trial court's] discretion has been abused." But the factual situation in *Baldwin* was not even remotely similar to that here presented. Indeed, when the facts of the two cases are compared, the decision in *Baldwin* supports the position of appellant as does the following language

from *Hall* v. *Hall*, 42 Cal.2d 435, 442 [267 P.2d 249] :

"The principles which the trial judge must apply in awarding alimony are few and necessarily general in nature. An allowance for support must be made 'having regard for the circumstances of the respective parties.' (Civ. Code, § 139.) In making that award the trial court has a wide discretion. (*Baldwin* v. *Baldwin*, 28 Cal.2d 406, 413 [170 P.2d 670].) 'Circumstances' includes 'practically everything which has a legitimate bearing upon the present and prospective matters relating to the lives of both parties.' (*Lamborn* v. *Lamborn*, 80 Cal.App. 494, 499 [251 P. 943].) '[I]t refers to the needs of the parties and the abilities of the parties to meet such needs; and in measuring such circumstances, consideration should be given to property owned and obligations to be met as well as to ability to earn and actual earnings.' (*Becker* v. *Becker*, 64 Cal.App.2d 239, 242 [148 P.2d 381].) "

The transcript of the rather brief and hurried proceedings lends substantial support to appellant's contentions that the trial court failed to give any consideration to her plea for alimony and in practical effect rejected and refused to consider relevant and material evidence. It would extend this opinion unduly to quote all of the comments cited by appellant but the following excerpt is indicative of their tenor:

"Q. BY MR. BRANDEIS: After taxes have been paid he has $37,500 left? A. That's correct. A. All right. Now, in addition to the income which he derives from the Bio Laboratories, does he operate an automobile that is charged entirely to the business? THE COURT: May I ask this question? According to his statement of the accountant he has an income, net income of somewhere around $3,000 per month, plus— MR. BRANDEIS: Yes. THE COURT: Now, what are we talking about? Why do you want to go into the fact whether he drives a car or not? If he wants to drive a Pierce-Arrow from England it is all right with me. He has sufficient income to support *the two minor children, period. The only question here is what is adequate support for them.*

"MR. BRANDEIS: If the Court please, the only reason I was going to mention this is because there may be as much as an additional $500 a month that the average tax payer would have to deduct from his income, because these are things he cannot take advantage of taxwise. THE COURT: Yes. MR. BRANDEIS: So that actually instead of talking in terms of $3,000 a month the Doctor is netting approximately $3,500, or maybe a little more.

"THE COURT: Well, all right, if you want to. It is like saying J. Pierpont Morgan has a million dollars a year and we are talking about how much it costs to support a child. Naturally he has the financial ability to support a child, so what difference does it make whether he is making $3,000 or $4,000 a month. I mean, that is my point. Maybe it is no good. I don't know. It seems to me that it is. In other words, if he had the financial ability to adequately pay for the payments, then why go into all these other little extraneous add-ons? That is my feeling. Now, if you want to, I am not going to deprive you of doing it. I am merely making a suggestion. You can ask the question faster than we can argue about whether or not you should ask it." (Italics added.)

A reading of the transcript of the hearing leads to the unavoidable conclusion that the trial court conducted the entire proceedings upon the declared premise that no consideration was being given to appellant's prayer for an award of alimony. This was indicated by various statements of the court and it was expressed most clearly when the court said that "the only question here is what is adequate support for them," referring to the two minor children. In short, it appears that in truth the trial court did not give the alimony issue the consideration which is an indispensable element in any proper exercise of discretion.

I would reverse the order denying appellant alimony as well as the order presented in appeal No. 29690.

A petition for a rehearing was denied November 28, 1966, and appellant's petition for a hearing by the Supreme Court was denied January 18, 1967.