[Civ. No. 40256. First Dist., Div. One. Mar. 28, 1977.]

CAROL LYNN SMITH, Petitioner, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent;
RICHARD MORRIS LYMAN III, Real Party in Interest.

COUNSEL

Ketchum & Ketchum and Myra A. Ketchum for Petitioner.

No appearance for Respondent.

Sullivan, Rizzo & Eisenberg and Ralph A. Rizzo for Real Party in Interest.

OPINION

ELKINGTON, J.—We review (see Code Civ. Proc., §§ 1067-1077) two adjudications of the San Mateo County Superior Court holding petitioner Carol Lynn Smith (hereafter, for convenience only, Carol) in contempt for disobedience of certain of the court's orders. The orders concerned visitation rights of Carol's former husband Richard Morris Lyman III (hereafter, also for convenience only, Richard) with their daughter Michelle.

■ Our review " 'is limited to determining whether there was any substantial evidence to sustain the jurisdiction of the trial court' " in making the contempt adjudications. (*In re Buckley,* 10 Cal.3d 237, 247 [110 Cal.Rptr. 121, 514 P.2d 1201, 68 A.L.R.3d 248] [cert. den., 418 U.S. 910 (41 L.Ed.2d 1156, 94 S.Ct. 3202)].)[1]

But that jurisdiction in turn depended upon whether, under the state's recently enacted Uniform Child Custody Jurisdiction Act (Civ. Code, §§ 5150-5174; hereafter sometimes, the Act),[2] the court had jurisdiction over the subject matter when, on the parties' stipulation, it modified

[1]This principle holds that when a court's finding or a jury's verdict is attacked on the ground that it is not sustained by the evidence, the power of an appellate court begins and ends with the determination whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding or verdict. Questions of credibility must be resolved in favor of the fact-finder's determination, and when two or more inferences can reasonably be drawn from the evidence, a reviewing court may not substitute its deductions for those of the trier of fact. If on any material point the evidence is in conflict, it must be assumed that the court or jury resolved the conflict in favor of the prevailing party. (*Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.,* 66 Cal.2d 782, 784 [59 Cal.Rptr. 141, 427 P.2d 805]; *Treadwell* v. *Nickel,* 194 Cal. 243, 260 [228 P. 25].)

[2]For a well-considered discussion of the Act, see 6 Witkin, Summary of California Law (8th ed. 1974) Parent and Child, sections 21-43, pages 4554-4571.

an earlier judgment of dissolution of the parties' marriage, in respect of Richard's custody and visitation rights with Michelle. Such visitation rights are treated as "custody matters" under the Act.

The Act (Civ. Code, § 5152) provides, as relevant to our discussion, that:

"(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if the conditions as set forth in any of the following paragraphs are met:

"(a) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state.

"(b) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships. . . ."

The Act, of course, generally concerns *subject matter jurisdiction,* i.e., "child custody matters," and not *jurisdiction over the persons* of the parents. Code of Civil Procedure section 410.50, subdivision (b) (enacted 1969), a statute of general application, provides: "Jurisdiction of the court over the parties *and the subject matter of an action* continues throughout subsequent proceedings in the action." (Italics added.) ▮ But the conflicting provisions of the Act (enacted 1973) will control over section 410.50, subdivision (b), for the Act is a special statute, and was enacted later in time. " 'It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment.' " (*In re Williamson,* 43 Cal.2d 651, 654 [276 P.2d 593].) " 'Where the provisions of one statute irreconcilably conflict with those of another, the later enactment, by implication, repeals any conflicting provisions contained in the earlier.' " (*Adams* v. *Superior*

*Court,* 8 Cal.App.3d 569, 572 [87 Cal.Rptr. 667].) Were the rule otherwise, the Act would have little or no purpose or meaning.

Pursuant to the above-quoted subdivision (1)(b) the trial court, among other things, found: "The Superior Court, County of San Mateo, State of California, has sufficient contacts with the matter, child, parents and relatives, to render said Court of said state jurisdiction, and does now have jurisdiction under jurisdictional prerequisites substantially in accordance with the [Act] . . . ."

Substantial evidence before the court and reasonable inferences therefrom tending to support its order established the following factual context.

The marriage of the parties was dissolved in 1966 by a judgment of the San Mateo County Superior Court. Custody of the parties' then two-year-old daughter Michelle was awarded to Carol with certain visitation rights to Richard. Both parties thereafter remarried. Carol first lived with her new husband and Michelle for about a year in Guatemala. They then moved to Oregon, where her husband "entered graduate school and received his Ph.D. in Economics" and Carol secured employment as a schoolteacher. He had since completed his graduate work but was unable to find employment. Michelle's maternal and paternal grandparents lived in the San Francisco Bay area, as did several other relatives on Richard's side of the family; there were family gatherings on Richard's side, and all appeared to have shown an interest in, and affection for, Michelle. Several members of Richard's family had been sending gifts to Michelle "for Christmas and her birthday . . . ." Michelle had a half sister, and was soon to have another half sister or half brother, living with Richard. And but for her mother, Carol, it appears that Michelle had no relatives in Oregon. Carol was on good terms with her parents in the San Francisco Bay area, and she and Michelle visited occasionally with them.

At a time when Michelle had lived with her mother and stepfather in Oregon for about five years, Carol and Richard entered into a stipulation concerning the latter's custody and visitation rights with Michelle. It provided, among other things, that Michelle would be sent to the California home of Richard, at his expense, during the "week of Spring school break at or near Easter, 1976, whether it be Easter or another week from Saturday immediately after the Easter break to the following Saturday; however, if the Sunday immediately after the end of such

visitation shall be Easter Sunday, then such visitation shall also include Easter Sunday, and in such event, the minor child of the parties shall be returned so that she will arrive at her residence no later than 8:00 P.M. Easter Sunday; . . ." At the request of both parties their judgment of dissolution of marriage was, by the San Mateo County Superior Court, modified to that effect.

As stated by Carol: "Due to the child's strenuous resistance, and on the advice of a psychologist in Oregon . . . the child was not sent to California for visitation during the Spring break of 1976." Richard commenced contempt proceedings which resulted in the first of the two orders here under review. The superior court then made another order as follows: "Petitioner Carol Lynn Smith . . . is ordered and directed by this Court to be personally present on, and to produce personally in this Court Michelle Catherine Lyman on, August 11, 1976 at 2:00 P.M.; [¶] . . . The parties hereto and the minor child Michelle Catherine Lyman are ordered to report to the Probation Department and a psychologist of the Child Development Services at Chope Hospital, County of San Mateo, is directed to conduct an interview of the parties and render an independent opinion as to the effect upon Michelle Catherine Lyman of visitation as previously ordered by this Court; . . ." Neither Carol nor Michelle appeared as required by the latter order. This resulted in the second of the two contempt adjudications.

In our determination whether the contempt adjudications are supported by substantial evidence, we are aided by Notes of the National Conference of Commissioners on Uniform State Laws (hereafter Commissioners) appended to sections 3 and 14 of the Uniform Child Custody Jurisdiction Act (9 U. Laws Ann. (master ed. 1973) pp. 106-109, 121-123)), which sections have been adopted without material change by California as Civil Code sections 5152 and 5163. ■ " 'Reports of commissions which have proposed statutes that are subsequently adopted are entitled to substantial weight in construing the statutes.' " (*Keeler* v. *Superior Court,* 2 Cal.3d 619, 630 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420]; *Van Arsdale* v. *Hollinger,* 68 Cal.2d 245, 249 [66 Cal.Rptr. 20, 437 P.2d 508].)

Under the Act (Civ. Code, § 5152), Michelle having lived in the State of Oregon for more than six months prior to the custody and visitation rights modification proceedings, that state was her "home state." (See Civ. Code, § 5152, subd. (1)(a).) No contrary contention is made.

The Commissioners' Notes (*op. cit.*) recite the following, among other things:

"Paragraphs (1) and (2) of subsection (a) [of § 3 of the Act; reclassified as pars. (a) and (b) of subd. (1) of Civ. Code, § 5152] establish the two major bases for jurisdiction. In the first place, a court in the child's home state has jurisdiction, and secondly, if there is no home state or the child and his family have equal or stronger ties with another state, a court in that state has jurisdiction. . . . [¶¶] Paragraph (2) [(1)(b) of Civ. Code, § 5152] comes into play either when the home state test cannot be met or as an alternative to that test. . . . [¶¶] . . . The first clause of the paragraph is important: jurisdiction exists only if it is in the *child's* interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with the state. The submission of the parties to a forum, perhaps for purposes of divorce, is not sufficient without additional factors establishing closer ties with the state. . . . [¶¶] . . . The fact that the court had previously considered the case may be one factor favoring its continued jurisdiction. If, however, all the persons involved have moved away or the contact with the state has otherwise become slight, modification jurisdiction would shift elsewhere."

■ From our consideration of the Act, the evidence we have adverted to, and the Commissioners' Notes, we are of the opinion that there was substantial evidence before the superior court supporting the following conclusions: Michelle and her family had equal or stronger family ties with California as compared with Oregon, and "the *child's* interest" would best be served by a California forum having "optimum access to relevant evidence about the child and family." Or, as stated in the Act, "there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships." (Civ. Code, § 5152, subd. (1)(b); quoted *ante.*) And of some additional significance is the fact that the parties themselves had submitted the issue of Richard's custody and visitation rights with Michelle to the California court,[3] which court had previously considered the case.

---

[3]The parties, of course, could not confer upon the state's superior court jurisdiction which otherwise did not exist over the *subject matter* of their present dispute. (See *Sampsell* v. *Superior Court*, 32 Cal.2d 763, 776 [197 P.2d 739]; *Summers* v. *Superior Court*, 53 Cal.2d 295, 298 [1 Cal.Rptr. 324, 347 P.2d 668].) But, nevertheless, from the

There was of course other evidence and permissible inferences therefrom tending *not* to support the superior court's determination of jurisdiction, but as pointed out (see *In re Buckley, supra,* 10 Cal.3d 237, 247; and fn. 1, *ante*), we must presume that the court believed, and acted upon, that which we have related.

We conclude that the San Mateo County Superior Court had jurisdiction to modify the child custody and visitation provisions of the judgment dissolving the parties' marriage, and that accordingly the court's contempt adjudications were also within its jurisdiction.

Contemporaneously with the above-considered contempt adjudications the superior court ordered (1) that Richard's "obligation to pay child support for or on behalf of [Michelle] is terminated until further order of this court," and (2) that Carol pay to Richard "the sum of $1,250.00 as and for attorneys fees; and . . . the sum of $37.30 as and for court costs." These orders must reasonably be considered as integrated with the above-considered contempt adjudications.

█ It is patent that the first of these two orders was erroneous, for a child may not reasonably be denied support by one parent because of violation of a court order by the other. The rationale of section 1694 of the Code of Civil Procedure (tit. 10a, Revised Uniform Reciprocal Enforcement of Support Act of 1968) is applicable: ". . . The determination or enforcement of a duty of support owed to one obligee is unaffected by any interference by another obligee with rights of custody or visitation granted by a court."

█ We also opine that the order requiring Carol to pay Richard's attorney fees and costs was an abuse of the trial court's discretion. The right, if any, to such an order is derived from Civil Code section 4370. Under this section (as with its predecessor statutes) the court "may order the . . . father or mother . . . to pay such amount as may be *reasonably necessary* for the cost of maintaining or defending the proceeding and for attorneys' fees; . . ." (Italics added.) The *sine qua non* of such an order "is the *necessity* therefor." (*Spreckels* v. *Spreckels,* 111 Cal.App.2d 529, 533 [244 P.2d 917]; and see *In re Marriage of Janssen,* 48 Cal.App.3d 425, 428-429 [121 Cal.Rptr. 701]; *In re Marriage of Coleman,* 26 Cal.App.3d 56, 59 [102 Cal.Rptr. 629].) The critical question is whether the party

parties' submission of the visitation issue to the superior court an inference may reasonably be drawn that the parties themselves considered Michelle's family and other ties with the State of California were the stronger.

" 'has need of the money to maintain the proceedings in question.' " (*Modglin* v. *Modglin,* 246 Cal.App.2d 411, 415 [54 Cal.Rptr. 582].) Here there was no showing of such need by Richard, nor does the record reasonably afford an inference of such need.

The contempt adjudications are affirmed, and the contemporaneous orders terminating the obligation to pay child support until further order of the court and awarding attorney fees and costs are annulled. The parties will stand their respective costs of this proceeding in review.

Lazarus, J.,* concurred.

**SIMS, Acting P. J.**—I concur in the decision to affirm the contempt adjudications and to annul the contemporaneous orders terminating the obligation to pay child support until further order of the court and awarding attorney fees.

In my opinion, however, jurisdiction over the person of petitioner, who voluntarily appeared and stipulated to a change in the custody order, was conferred by sections 410.10 and 410.50 of the Code of Civil Procedure. I believe that the provisions of section 5152 of the Civil Code do not abrogate the general power of domestic courts with jurisdiction over the person under section 410.10 of the Code of Civil Procedure. Those provisions should be deemed guidelines to the exercise of the court's discretion to stay or dismiss an action, under section 410.30 of the Code of Civil Procedure, when it finds that in the interest of substantial justice, as outlined in Civil Code section 5152, the action should be heard in a forum outside this state. I am not, therefore, troubled by any inability of a parent to stipulate to the jurisdiction of the court over a matter involving the custody of his or her child (cf. fn. 3 of the opn.).

A petition for a rehearing was denied April 26, 1977, and the petition of the real party in interest for a hearing by the Supreme Court was denied May 26, 1977.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.