[Civ. No. 54785. Second Dist., Div. Two. Dec. 7, 1979.]

RICHARD G. ALLISON, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
IRENE K. ALLISON, Real Party in Interest.

COUNSEL

Rhodes, Barnard, Maloney, Hart & Mullen, Dennis M. Mullen and Christopher M. Harding for Petitioner.

No appearance for Respondent.

Edward J. Horowitz, under appointment by the Court of Appeal, for Real Party in Interest.

OPINION

**FLEMING, Acting P. J.**—Petition by Richard Allison to mandate respondent court to dismiss Irene Allison's orders to show cause on contempt and on modification of child custody. Pursuant to an order of the Supreme Court we issued an alternative writ.

In June 1974 Richard and Irene Allison obtained from the Los Angeles Superior Court a judgment of dissolution of marriage, which awarded custody of the parties' three-year-old twins to Irene. In May 1976 the parties stipulated to, and the California court ordered, transfer of custody of the children to Richard, with specified right of visitation in Irene, and with authorization to Richard to remove the children from California. In June 1976 Richard, a physician, migrated with the children to Texas. In May 1977 the children visited Irene in California for one week.

A second visit by the children to California scheduled for December 1977 was cancelled by Richard, who indicated he would not allow the children to make further visits to Irene. On September 26, 1978, Irene served on Richard an order of the Los Angeles Superior Court to show cause on contempt, alleging that Richard had denied her rights of visitation. A hearing on the show cause order was scheduled for October

10 in Los Angeles. On September 29 Richard filed in a Texas district court an "Original Petition in Suit Affecting the Parent-Child Relationship." This petition, served on Irene in California on October 3, specified a hearing date of October 6. Irene's telephonic request to the Texas court for a continuance was denied, and on October 6 the Texas court in Irene's absence found, on the basis of testimony from Richard and Richard's parents and letters from two Texas psychologists, that the children would suffer serious psychological damage if they were permitted to visit Irene. The court entered an order purporting to terminate her right of visitation.

On October 10 Irene petitioned the Los Angeles Superior Court to modify child custody. On October 16 Richard moved in the California court under the Uniform Child Custody Jurisdiction Act (Civ. Code, § 5150 et seq. (the Act)) to dismiss the proceedings in California, a motion which that court denied. This petition followed.

Three questions are presented: (1) Does the California court have jurisdiction to hear the controversy, (2) if it does, should it exercise its jurisdiction, and (3), if it does exercise jurisdiction, what matters should it cover?

I

CALIFORNIA JURISDICTION

■ The marriage of the parties was dissolved in 1974 by a California judgment which determined custody and visitation rights over the children. In 1976, pursuant to stipulation, the original custody order was modified, again by a California court. Patently, under general jurisdictional principles a California court has the power to enforce or further modify its own judgment, particularly when the request for enforcement or modification comes from a party who is a California resident. (Civ. Code, § 4380; *Smith* v. *Superior Court* (1977) 68 Cal. App.3d 457 [137 Cal.Rptr. 348].) Absent other factors, the Los Angeles Superior Court possesses unquestioned jurisdiction in this cause to enforce the terms of its own judgment and its custody and visitation orders.

But the objects of the controversy, the children, are, and for 18 months prior to the eruption of the dispute in December 1977 had been,

residents of Texas. A Texas court, too, possesses potential jurisdiction over the controversy, involving as it does enforcement and modification of child custody and visitation orders, in that every state possesses general jurisdiction to protect the welfare of children who reside within its borders. (*Sampsell* v. *Superior Court* (1948) 32 Cal.2d 763 [197 P.2d 739].)

The controversy at bench thus involves two states, each of which possesses a legitimate claim to adjudicate the cause. Past similar duplication of jurisdiction in child custody causes led to countless unseemly controversies among courts of different states arising out of disputes between parents over child custody and visitation rights, a situation which deteriorated into public scandal and eventually brought about enactment of the Uniform Child Custody Jurisdiction Act (Civ. Code, §§ 5150-5174), legislation which was crafted to avoid unseemly judicial competition among states in matters of child custody and visitation. California adopted the Act in 1973, but Texas has not. As a consequence, those provisions of the Act which envisage reciprocal and uniform exercise of jurisdiction between states possessing concurrent jurisdiction over child custody and visitation matters have not come into play with respect to Texas. Nevertheless, those provisions of the Act that do not demand state reciprocity are presently binding on the courts of California, even with respect to such nonadopting states as Texas. We must therefore determine the jurisdiction of the California court on the basis of the Act, to the extent that the Act's adoption represents an unconditional declaration of California legislative policy unrelated to the Act's provisions for state reciprocity.

From our reading of the Act we conclude that the Los Angeles Superior Court possesses jurisdiction over this controversy. A California court acquires jurisdiction over a child custody determination when "the child and at least one contestant, have a *significant connection* with this state" and "there is available in this state *substantial evidence* concerning the child's present or future care, protection, training, and personal relationships." (Civ. Code, § 5152, subd. (1) (b); italics added.) The divorce decree, the custody order, and the stipulated modification-of-custody order were each made in California. Irene has been a California resident throughout. The children were born in California, lived here for five and one-half years until June 1976, and returned to California to visit their mother in May 1977. Under the Act the physical presence of a child in California is not essential to jurisdiction over a custody determination (Civ. Code, § 5152, subds. (2) and (3)). We

conclude the children possessed a *significant connection* with California, even though they had resided with Richard in Texas for 18 months prior to the outbreak of controversy between their parents in December 1977.

The second condition of jurisdiction, the availability of substantial evidence within the state, is dependent on the particular issues which are in dispute. Here, the key issue in controversy is the mental and emotional condition of Irene as it affects her capacity to exercise visitation rights without harm to her children. Richard proffered testimony in Texas to prove Irene unfit to enjoy visitation rights. Irene filed in this court reports of two psychiatrists and a clinical psychologist, each of whom concluded she is fit to exercise visitation rights. Patently, *substantial evidence* on the critical issue of the controversy (Irene's present ability to maintain personal relationships with her children) is more readily available in California than in Texas, and the greater availability of such evidence in California makes the issue of Irene's capacity to exercise visitation rights easier to resolve in California than in Texas. Thus, by reason of significant connection of parent and children with California, and of availability of substantial evidence in California on the children's personal relationships, the Los Angeles Superior Court possesses jurisdiction to make a child custody determination in this cause (§ 5152, subd. (1) (b); *Smith* v. *Superior Court* (1977) 68 Cal. App.3d 457 [137 Cal.Rptr. 348]).

II

APPROPRIATENESS OF EXERCISE OF CALIFORNIA JURISDICTION

Our determination that the California courts possess jurisdiction over the controversy does not dispose of the petition, for we must also determine whether under appropriate principles of comity California should exercise its jurisdiction in this cause. To this latter determination two points are critical.

■ 1. *Lack of Substantial Compliance by Texas with the Principles of the Act.* Texas has not adopted the Uniform Child Custody Jurisdiction Act, and hence the uniformity in custodial proceedings contemplated by the Act's provisions for reciprocity among states has not occurred between California and Texas. In effect, the Act declares that a court of one state shall not on its own, and without more, undertake

to exercise custodial jurisdiction when at the time of the petition a proceeding involving the custody of the child is pending in a court of another state exercising jurisdiction in substantial conformity with the Act (Civ. Code, § 5155). At bench, because the controversy over visitation was first presented to a California court which, as we have determined, was exercising jurisdiction in conformity with the Act, the Texas court, had it been operating under the provisions of the Act, would have been compelled to comply with those safeguards of the Act which require a court, when a similar proceeding is pending in another state, to formally determine which jurisdiction would be the more appropriate forum for resolution of the controversy. (Civ. Code, §§ 5155, 5168-5171.) Since Texas never adopted the Act, it is understandable that the Texas court did not feel impelled to conform to the Act's procedures.

A second substantial departure from the procedures mandated by the Act was the 3-day notice of the proceedings given by the Texas court to Irene, the contestant who resided in California, instead of the 10 days notice required by the Act for the exercise of jurisdiction over persons outside the state (§ 5154). Wholly apart from the Act's specification of 10 days notice, we have grave doubt whether a 3-day notice to a California resident of a proceeding in Texas passes muster as valid notice under general principles of due process.

By reason of these procedural deficiencies we think it readily apparent that Texas was not a state exercising child custody jurisdiction "substantially in conformity" with the Act; hence, the Los Angeles Superior Court was not constrained by principles of comity from an appropriate exercise of its jurisdiction in the cause (Civ. Code, §§ 5154, 5155).

■ 2. *Convenience of California Forum.* But even though the Texas court did not exercise jurisdiction in compliance with the Act, perhaps not even in compliance with due process, Texas still retains the potential for a valid exercise of jurisdiction. The question remains whether the California court should defer the exercise of its jurisdiction to a Texas court. On this issue, one of convenience of forum, we think the following factors are determinative:

(1) The visitation issue was first raised in the California court and was pending in California prior to initiation of any action in Texas.

(2) The Texas court did not take appropriate steps to acquire jurisdiction over the cause.

(3) The key issue in the controversy is the capacity of the mother to exercise her right of visitation. In his testimony before the Texas court the father conceded that if the mother were capable of exercising visitation rights, he would withdraw his objection to visitation. Competent medical opinion on the present condition of the mother can be obtained only in California.

(4) From the record in the trial court it appears that the father is better able, financially, to present his case in California than is the mother to present hers in Texas. The father, a successful physician in California, presumably continues to enjoy the income of a successful physician in Texas. The mother is inpecunious, and her affidavit to that effect persuaded this court to appoint counsel to act on her behalf in this proceeding. Even though the relative financial condition of the parties is not a factor specifically enumerated in the Act, it is one which every court must necessarily take into account to some degree in determining convenience or inconvenience of forum. (Code Civ. Proc., § 410.30; *Great Northern Ry. Co.* v. *Superior Court* (1970) 12 Cal.App.3d 105, 113 [90 Cal.Rptr. 461]; *Henderson* v. *Superior Court* (1978) 77 Cal.App.3d 583, 596 [142 Cal.Rptr. 478], and cases there cited.)

For these reasons, that the controversy was first brought to court in California, that Texas has not taken appropriate steps to assume jurisdiction, that the bulk of the evidence on the key issue is found in California, and that the financial disparity of the parties favors the conduct of the litigation in California, we conclude that the Los Angeles Superior Court correctly rejected Richard's motion to dismiss or stay the action.

### III

MATTERS COVERED IN THE EXERCISE OF JURISDICTION

██ The preceding analysis has focused primarily on modification of visitation rights, the immediate issue which precipitated this controversy into the courts. But by reason of Irene's petition for a change in custody the larger and more comprehensive issue of future custody is also pending in California, and through the exercise of appropriate procedures

that same issue could be activated in Texas. Which state should resolve this aspect of the controversy? If the issue of change of custody had arisen on its own, apart from Richard's unilateral decision to terminate Irene's visitation right in contravention of an existing California court order, a Texas court might have been considered the more convenient forum for resolution of the issue of custody. Absent other considerations the general rule is that "the court of the forum should ordinarily refuse to reopen the question of the custody of a [nonresident] child whose custody is vested under an existing decree in a nonresident parent." (*Ferreira* v. *Ferreira* (1973) 9 Cal.3d 824, 829 [109 Cal.Rptr. 80, 512 P.2d 304]; see also, *Clark* v. *Superior Court* (1977) 73 Cal.App.3d 298 [140 Cal.Rptr. 709], and *Schlumpf* v. *Superior Court* (1978) 79 Cal. App.3d 892 [145 Cal.Rptr. 190], cases deferring child custody determination to courts located in states which have adopted the Act.) Yet litigation does not take place on a parade ground, but on a battlefield whose location is determined by what has gone before. In this cause Richard precipitated the present controversy between the parties by acting in what appears to have been cavalier disregard of an existing California visitation order. By so doing he subjected himself to the charge of contempt of the Los Angeles Superior Court, and that court undertook to exercise its jurisdiction to enforce its visitation order. (*Smith* v. *Superior Court* (1977) 68 Cal.App.3d 457, 464 [137 Cal.Rptr. 348].) It thus necessarily undertook to resolve the issue of the wife's present condition and her capacity for personal relationships with her children.

Because the parties will be litigating in California a substantial portion of the factual issues relevant to change in custody, reasons of judicial and litigant economy suggest that all phases of child custody and visitation be determined by one court in one proceeding in California rather than by separate courts in separate proceedings in California and Texas. The policy of litigating related claims in the same tribunal is designed to avoid duplicitous litigation, inconsistent results, and unnecessary inconvenience to parties and witnesses. (See *Celanese Corp.* v. *Federal Energy Administration* (D.D.C. 1976) 410 F.Supp. 571, 575-576; *Jacobs* v. *Tenney* (D.Del. 1970) 316 F.Supp. 151, 169; *SmithKline Corporation* v. *Sterling Drug, Inc.* (D.Del. 1975) 406 F.Supp. 52, 55.) It is also a policy suggested in the Act itself, whose provisions authorize the court of a state in which a child is located to decline jurisdiction if the petitioner has violated the custody decree of another state (Civ. Code, § 5157). The clear implication of these provi-

sions is that the court of the state whose decree has been violated (in this instance California) should "when...just and proper" exercise general jurisdiction over all phases of the custody controversy.

In sum, California possesses jurisdiction and provides a convenient forum for the cause, and it is just and proper to resolve the entire controversy in the California courts.

The alternative writ is discharged, and the petition for mandate is denied. In addition to payment of the usual costs in appellate proceedings, petitioner is directed to pay real party's attorney the sum of $1,500 as reasonable attorneys' fees for services performed in this court. (Civ. Code, §§ 4370, subd. (a), 4371.) The trial court is directed to enter these sums as postjudgment orders in the cause, enforceable by all legal process, including contempt.

Compton, J., and Beach, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied February 27, 1980. Mosk, J., and Richardson, J., were of the opinion that the application should be granted.