John R. BARCUS, Jr., By Miriam A. Miller, his sister and next friend, Appellee,

v.

John R. BARCUS, Sr. and Betty L. Davis, also known as Betty L. Barcus, Appellants.

No. 62357.

Supreme Court of Iowa.

April 25, 1979.

Arnold O. Kenyon, III of Kenyon Law Office, Creston, for appellants.

Paul J. Boysen, Jr., of Camp, Harsh & Boysen, Creston, for appellee.

Considered by REES, P. J., and HARRIS, McCORMICK, ALLBEE and LARSON, JJ.

McCORMICK, Justice.

In this case of first impression under the Uniform Child Custody Jurisdiction Act, we must decide whether the trial court erred in refusing to exercise its jurisdiction to decide the merits of a custody dispute. The court sustained a petition for writ of habeas corpus, ordering the child returned to Illinois for decision of the custody issue in a case pending there. We hold that the court did not err in declining jurisdiction but that the transfer of the child should be conditionally stayed pending final adjudication of the custody issue. We affirm the trial court's order as modified.

Iowa is one of twenty-six states which have enacted the Uniform Child Custody Jurisdiction Act (hereinafter "uniform act" or "act"). Illinois is one of the states which have not done so. 9 *Uniform Laws Annotated* 28 (1978 Supp.). However, Illinois has enacted a statute incorporating the jurisdictional criteria of the uniform act, effective October 1, 1977. *See* Ill.Rev.Stat. ch. 40, § 601 (Smith-Hurd 1978 Supp.). Iowa's statute was effective July 1, 1977. *See* 1977 Session, 67th G.A., ch. 139. All references will be to the act as it appears in chapter 598A, The Code 1979.

This habeas corpus case involves competing claims for the custody of plaintiff John R. Barcus, Jr. ("Johnny"), born September 27, 1967. Contestants are Miriam A. Miller, his half-sister, who initiated this proceeding, and John R. Barcus, Sr. ("John"), his

father. John's present wife Betty L. Barcus is joined with him as defendant.

Johnny is the only child of John's marriage to Violet Barcus. Miriam is Violet's daughter from a prior marriage. John and Violet were married in Illinois in 1960. They moved to Creston when Johnny was six-months old. Their marriage was dissolved in 1975. Violet was awarded custody of Johnny, but by agreement of the parties the child stayed with John for the first six months after the dissolution.

Violet then cared for Johnny until she was disabled by serious illness in 1977. On April 30, 1977, she moved with Johnny from Creston to Miriam's home in Elburn, Illinois. Violet died in Illinois on July 18, 1977.

John read of Violet's death in a local newspaper. He went to Illinois in an effort to get Johnny, but Miriam refused to let him see him. Violet had nominated Miriam as guardian of Johnny in a will executed in May 1977. A few days after Violet's death, John married Betty.

On July 29, 1977, John obtained an ex parte order in the Union County dissolution action, awarding Johnny's custody to him. On the same date, Miriam obtained an ex parte order from the circuit court in Kane County, Illinois, appointing her as Johnny's guardian. These events set the stage for the subsequent jurisdictional competition.

In August 1977 John initiated three actions in the Illinois court. One was a petition to register his custody order as a foreign decree; another was a petition to vacate the guardianship order; and the third was a petition for writ of habeas corpus in which he requested Johnny's custody.

These Illinois actions were united in a single proceeding. A hearing commenced on the habeas corpus petition on August 17, 1977. John was the only witness. His testimony included statements that he and Betty were planning to move to Illinois and had made a down payment on a house in St. Charles in preparation for doing so. He said they intended to use Betty's substantial assets to go into business in that area. In the present case, he testified they had no intention of moving to Illinois and insisted he was only reporting an investment in residential real estate to the Illinois court in his prior testimony.

On August 18, 1977, the Illinois court ruled that Johnny's custody should temporarily remain with Miriam but ordered that John be allowed to take him for visitation from that date until August 29, at which time he was to be returned to Miriam so he could start school the next day. A psychiatric examination of the child was ordered, and hearing on the merits of the custody issue was set for September 29, 1977.

John took his son to Iowa and did not return him to Illinois. The Illinois court subsequently found John in contempt and ordered a body attachment to issue. John's petitions for registration of a foreign decree and to vacate the guardianship were dismissed. However, the record does not show dismissal of the Illinois habeas corpus action.

In November 1977 Miriam brought the present habeas corpus action in Union County. She recited the history of prior litigation, alleged defendants' detention of Johnny was unlawful, and prayed for his return to her custody. In his answer, John denied the legality of the Illinois guardianship order, asserted his right to custody based on his Iowa custody order, and alleged Johnny's best interests required that he be awarded custody.

Miriam's action was not tried until August 24, 1978. On that date Miriam filed a request that the court refuse to exercise jurisdiction to adjudicate the merits of the custody dispute, pursuant to various provisions of the uniform act. After hearing the evidence, the trial court granted this request and sustained the petition for habeas corpus, ordering Johnny returned to Miriam pending trial of the custody issue in Illinois.

Defendants appealed, and we stayed the transfer of custody pending decision of the appeal.

In enacting the uniform act, the legislature directed that it be construed to (1) avoid jurisdictional competition and conflict

with courts of other states in matters of child custody with attendant harm to children from shifting them from state to state, (2) promote cooperation with courts of other states to the end that the custody decision is made in the state which can best decide the case in the interest of the child, (3) assure that custody litigation takes place in the most appropriate forum, (4) discourage continuing controversies over child custody to foster stability, (5) deter abductive and other unilateral removals of children to obtain custody awards, (6) avoid relitigation of custody decisions of other states in this state, (7) facilitate enforcement of sister-state custody decrees, (8) promote exchanges of information and mutual assistance between courts of this state and other states concerned with the same child, and (9) make uniform the law of the states which adopt the act. § 598A.1.

As noted by the Colorado Supreme Court, the underlying policy of the act is "to eliminate jurisdictional fishing with children as bait." *Wheeler v. District Court*, 186 Colo. 218, 220, 526 P.2d 658, 660 (1974).

In seeking reversal of the trial court in this case, defendants contend (1) the act is applicable only when the other state involved has also enacted it, (2) the court lacked authority to defer to the jurisdiction of the Illinois court, (3) the court had no power to sustain the writ of habeas corpus, after declining jurisdiction, (4) the action of the court denied them due process, and (5) the best interests of the child required the court to decide the merits of the custody issue.

▮ I. *Applicability of the act.* Under section 598A.6, a court of this state should not exercise its jurisdiction "if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this chapter, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons." Defendants assert this provision makes the statute inapplicable since Illinois did not then have a comparable stat-

ute and therefore could not have been "exercising jurisdiction substantially in conformity" with the act. Because the events here occurred before Illinois' adoption of the uniform act jurisdictional criteria, this issue is not affected by that enactment. Nonetheless, defendants' contention is without merit.

In the first place, section 598A.6 concerns only one of several possible grounds for declining jurisdiction, the situation where a custody case is pending in another state. Its requirements do not affect the grounds for refusing jurisdiction in sections 598A.7, based on inconvenient forum, and 598A.8, based on a petitioner's conduct. Even if the terms of section 598A.6 were not satisfied, the act might still be applicable upon another ground.

Second, the act defines "state" to include all states, not merely those having the uniform act. § 598A.2(10).

Third, the commissioners in their prefatory remarks said the act is not a reciprocal law. 9 *Uniform Laws Annotated, Uniform Child Custody Jurisdiction Act*, 102 ("It can be put into full operation regardless of enactment by other states."). In their commentary to the relevant section, which appears in our statute as 598A.6, they explained that for a pending case in another state to be a basis for declining jurisdiction the other state need only be exercising jurisdiction under criteria delineated in the act. *Id.* at 112. These criteria are listed in section 598A.3. Subsection 1(b) authorizes jurisdiction if

> [i]t is in the best interest of the child that a court of this state assume jurisdiction because the child . . . and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships . . . .

The Illinois court was exercising jurisdiction in substantial conformity with this provision even though Illinois did not then have a comparable statute.

Other courts have also rejected the contention that the act is applicable only when the other state has enacted it. *See In re Custody of Rector*, 565 P.2d 950 (Colo.App. 1977); *In re McDonald*, 74 Mich.App. 119, 253 N.W.2d 678 (1977); *Bergstrom v. Bergstrom*, 271 N.W.2d 546 (N.D.1978). *See also Moore v. Moore*, 24 Or.App. 673, 546 P.2d 1104 (1976).

We reject defendants' assertion that the act is inapplicable because Illinois had not adopted it.

II. *The court's authority to decline jurisdiction.* Defendants' allegation that the trial court lacked authority to defer to the jurisdiction of the Illinois court ignores the provisions of the act which define circumstances in which an Iowa court either should or may do so, depending upon the particular provision.

 Two provisions are relevant here, sections 598A.6 and 598A.8(1). We believe that these provisions are each sufficient authority for the decision of the trial court to decline the request in John's answer for a determination of the merits of the custody dispute. John's request made him a "petitioner" for custody within the meaning of the act.

 Section 598A.6 has previously been discussed. When it is applicable, the Iowa court should decline jurisdiction unless the pending proceeding in the other state is stayed by the court of that state because the Iowa court is a more appropriate forum or for other reasons. Factors to be considered in determining appropriateness of the forum are defined in section 598A.7(3) in connection with declining Iowa jurisdiction on inconvenient forum grounds.

Defendants argue persuasively that Iowa is the more appropriate forum for litigating the present custody dispute. However that argument must be addressed to the Illinois court where the custody dispute was pending at the time the present action was brought. *See In re Custody of Rector*, 565 P.2d 950. Section 598A.6 also defines circumstances in which an Iowa court should communicate with the court of the other

state in an effort to obtain agreement on which is the more appropriate forum.

 Section 598A.8(1), also relevant, provides:

If the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in similar reprehensible conduct, the court may decline to exercise jurisdiction if this is just and proper under the circumstances.

The decision to decline jurisdiction on this ground is discretionary rather than mandatory. *Cf.* § 598A.8(2). It is a codification of the "clean hands" principle and should not be followed if doing so would jeopardize the welfare of the child. *See 9 Uniform Laws Annotated, supra*, Commissioners' Note, at 116.

 In holding this provision is applicable, we do not intimate that the Illinois guardianship order is valid as to John any more than his ex parte custodial order is valid as to Miriam. Neither order was obtained in compliance with the notice provisions of section 598A.4 or the requirements of due process. *See Patten v. Patrick*, 276 N.W.2d 390 (Iowa 1979).

However, the Illinois court's temporary custody order of August 18, 1977, is a sufficient predicate for application of section 598A.8(1). This situation is clearly one which the uniform act is designed to reach. The provision gives an Iowa trial court discretion to decline jurisdiction when a party uses the processes of the court of a sister state to obtain possession of a child and then defies the court in refusing to return the child to its jurisdiction.

The trial court did not abuse its discretion insofar as its refusal to exercise jurisdiction was based on this provision. We do not believe its order, as modified in this opinion, will jeopardize Johnny's welfare. We are aware of John's concern about litigating the custody dispute in Illinois. However, the Illinois court, upon appropriate motion, may well determine that the Iowa court is a more appropriate forum for the litigation. It has not been given an opportunity to do so. *See In re. Marriage of Kern*, 87 Cal. App.3d 402, 150 Cal.Rptr. 860 (1978).

Furthermore, no reason exists for believing Illinois will not give the same deference to parental rights as Iowa gives. *Compare* § 633.559, The Code 1977, *and In re Guardianship of Sams*, 256 N.W.2d 570 (Iowa 1977), *with* Ill.Rev.Stat.1977, ch. 110½, § 11–7 (Smith-Hurd 1978), *and Cebrzynski v. Cebrzynski*, 63 Ill.App.3d 66, 19 Ill.Dec. 841, 379 N.E.2d 713 (1978). Nor does it appear John's failure to return Johnny to Illinois will divert the Illinois court, any more than it would an Iowa court, from making a custodial award based on the child's best interests rather than punishment of the father. *Compare In re Marriage of Melton*, 256 N.W.2d 200 (Iowa 1977), *with People ex rel. Irby v. Dubois*, 41 Ill.App.3d 609, 354 N.E.2d 562 (1976), *and* Ill.Rev.Stat. ch. 40, § 602 (Smith-Hurd 1978 Supp.).

In enacting the uniform act, the legislature disavowed the notion that the courts of another state will not be as sensitive to the best interests of children as Iowa courts. *See Miller v. Superior Court of Los Angeles County*, 22 Cal.3d 923, 930, 151 Cal.Rptr. 6, 9-10, 587 P.2d 723, 727 (1978).

We agree it would have been more expeditious if the court in Union County had adjudicated the merits of the custody dispute, particularly after receiving evidence on the issue. However, while expeditious decision of custody cases is an important concern, we cannot let it be used to subvert the system which the legislature has established in trying to end the havoc in children's lives caused by jurisdictional combat of the kind waged by the parties in this case. If John had not evaded the jurisdiction of the Illinois court, the merits of the custody dispute could have been submitted there in September 1977, almost a year before the habeas corpus action was heard in Union County.

We hold that the trial court's decision to refuse jurisdiction was authorized and justified under both of the relevant provisions of the statute.

III. *Issuance of the writ of habeas corpus.* Defendants contend the trial court lacked authority to grant the writ of habeas corpus once it decided to decline jurisdiction. In urging this contention, they fail to distinguish between the court's authority to entertain the habeas corpus action and its authority to decline jurisdiction of the merits of the custody controversy.

■ Miriam brought the habeas corpus action as a means of obtaining a court order enabling her to resume custody of Johnny. In this way she sought to use the action to enforce the Illinois temporary custody order. The action was a means of challenging John's legal right to possession of the child. It is true that habeas corpus has been enlarged to encompass adjudication of the merits of child custody disputes. *Doan Thi Hoang Anh v. Nelson*, 245 N.W.2d 511 (Iowa 1976). However, this does not mean a court must try the merits of custody disputes in all cases.

■ The effect of applying the uniform act in this case is to narrow the scope of the habeas corpus inquiry. Once the court decided to refuse to decide the merits of the custody dispute, it still had the prerogative and duty in the habeas corpus action to determine whether Miriam had the right to take Johnny back to Illinois under the authority of the Illinois court's temporary custody order. Having decided she had that right and John had no right to detain the boy, the court had authority to sustain the petition for habeas corpus as a means of accomplishing that objective.

■ IV. *Due process.* Defendants allege the trial court's order deprived them of due process under U.S.Const. amend. XIV, § 1, because they had no warning the court could sustain the writ of habeas corpus without deciding the merits of the custody case. However, that is precisely the relief requested by Miriam and is the exact consequence provided for in the uniform act. The effect of the order was to enforce the Illinois temporary custody order. This was an order entered in an action initiated in Illinois by John after an appropriate hearing.

The proceeding here comported with the due process standard delineated in *Patten v.*

*Patrick*, 276 N.W.2d 390 (Iowa 1979). *See also In Interest of Hewitt*, 272 N.W.2d 852 (Iowa 1978).

It was not a violation of due process for the trial court to enforce the Illinois order.

■ V. *Johnny's best interests.* Defendants contend the trial court abdicated its overriding duty to protect the best interests of children by declining jurisdiction of the custody dispute after having heard the evidence on that issue.

It would have been sufficient for the court to decline jurisdiction under section 598A.6 on the basis of the pending Illinois case before hearing evidence. Yet some record had to be made to establish the separate ground for declining jurisdiction under section 598A.8(1). It was appropriate for the court to receive evidence in order to determine whether it was just and proper in the circumstances to decline jurisdiction on that ground.

The uniform act presupposes that the best interests of children are ordinarily better served by adherence to established statutory procedures which respect the jurisdiction of courts of other states than by ignoring unlawful conduct short-circuiting those procedures. The trial court's order responded more appropriately to Johnny's interests than would an order disregarding the pending Illinois proceeding and the manner in which John invoked and then evaded the jurisdiction of the Illinois court. It is John's conduct rather than the order of the trial court which has delayed a final decision on custody.

However, because of the passage of time and the possibility of trauma to Johnny by present enforcement of the Illinois temporary custody order, we modify the trial court's order by conditionally staying enforcement in Iowa of the Illinois court's temporary custody order pending final adjudication of custody by that court, or, if it decides the Iowa court is a more appropriate forum for litigation of the issue, a final adjudication by the district court in Union County. This stay is conditioned upon John's making an appropriate application in the Illinois court within forty days of the date of the filing of this opinion to initiate procedures for final adjudication of the merits of the custody issue in accordance with this holding. It is also conditioned upon his compliance with subsequent orders of the Illinois and Iowa courts in that litigation. *See Fry v. Ball*, 544 P.2d 402 (Colo. 1975); *In re McDonald*, 74 Mich.App. 119, 253 N.W.2d 678 (1977).

Except as modified, the trial court's order is affirmed.

AFFIRMED AS MODIFIED.