Kemper SLIDELL, III, Appellant,

v.

Chareen VALENTINE and John
Valentine, Appellees.

No. 62938.

Supreme Court of Iowa.

Nov. 12, 1980.

Jere C. Maddux, Ames, for appellant.

Charles Deppe, Story City, for appellees.

Considered by REYNOLDSON, C. J., and LeGRAND, HARRIS, LARSON and SCHULTZ, JJ.

LARSON, Justice.

Kemper Slidell III has appealed from an order of the district court denying custody of William Slidell under a Florida modification order. Upon our review of the case, we conclude Iowa, not Florida, has jurisdiction to decide the issue and that the district court properly refused to enforce the Florida decree; we modify the district court's order, however, as to support and visitation.

Kemper and Chareen, William's parents, were married in Florida in June, 1966, and William was born the following year. The marriage failed, and a divorce was granted to Chareen in 1968. Custody of William was awarded to her. Chareen remarried and, with William and her new husband, moved to California. The second marriage also failed, and a decree of divorce was entered in December 1974. Chareen returned to Florida and married the appellee, John Valentine.

On June 19, 1975, while a resident of Florida, Chareen filed a petition for modification of the 1968 Florida divorce decree, praying for increased child support, improved insurance coverage and more definite visitation provisions. Kemper counterpetitioned, requesting custody of William, and in the alternative, specific periods of visitation. The Florida court subsequently ordered Chareen to produce William. Despite this order, John and Chareen moved to Story City, Iowa, and the Florida proceedings, in which Chareen sought improved economic provisions and Kemper sought custody, remained dormant from July, 1975 until May 25, 1978.

In April, 1978, Chareen initiated an action in Iowa under the Uniform Support of Dependents Law, chapter 252A, The Code 1977, praying for past due and future child support from Kemper. Pursuant to that act, the proceedings were transferred to Florida where Kemper resided. Kemper responded by counter-petitioning for custody of William and moving to consolidate the 1975 petition for custody and Chareen's URESA action.[1] The Florida court granted Kemper's motion to consolidate. The 1975 modification application and the 1978 URESA petition were heard together on October 12, 1978. Chareen had filed an answer to Kemper's application but did not appear in person before the Florida court. Kemper and his present wife testified at the hearing. A recommendation of a Florida social investigator, who had interviewed William while the child was visiting his father in August, 1978, was presented in evidence. In its decree, the Florida court awarded custody to Kemper, denying Chareen's petition for support, and reserving jurisdiction to determine Chareen's visitation rights.

■ On October 13, Kemper sought to enforce the Florida modification order in Iowa through habeas corpus proceedings. (It is undisputed that habeas corpus proceedings are "custody proceedings" for purposes of implementing our Uniform Child Custody Jurisdiction Act, chapter 598A, The Code 1979, which is discussed later. See Barcus v. Barcus, 278 N.W.2d 646, 647 (Iowa 1979); 9 U.L.A., Child Custody Jurisdiction Act § 2(3), Commissioners' Note at 120 (1979)). The district court refused to enforce the provisions of the Florida decree. Instead, it ordered custody to remain in Chareen and increased Kemper's child support obligation, reserving judgment on Kemper's rights of visitation. From this judgment, Kemper has appealed. Chareen has cross appealed from that part of the order which held the Florida court's jurisdiction was not affected by the alleged improper consolidation of the modification and URESA actions.

I. *Jurisdiction.* Whether the United States Constitution, Article IV, section 1, requires full faith and credit to be accorded foreign custody decrees is still an open question, see, e. g., May v. Anderson, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed.2d 1221 (1953), and still presents difficult policy questions. In interstate disputes, the future certainty and predictability of custody orders afforded full faith and credit may run head on into the strong motivation of courts to reassess the child's circumstances and act "in his best interest." A court willing to enforce a judgment for money, for example, might balk at the enforcement of custody provisions of a dissolution obtained in a foreign jurisdiction with little or no meaningful contact with the child. See Bodenheimer, *The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of*

1. We refer to actions under chapter 252A, The Code, as "URESA," the familiar shorthand reference for actions instituted under the uniform support law.

*Laws,* 22 Vand.L.Rev. 1207, 1228 (1969) (presence in state for "migratory divorce" insufficient, alone, to confer custody jurisdiction).

The Uniform Child Custody Jurisdiction Act, enacted as 1977 Session, 67th G.A., ch. 139 (codified at ch. 598A, The Code 1979), seeks to strike a balance between the certainty and predictability accorded by full faith and credit and the courts' motivation to act in the best interests of the child. *See* Bodenheimer, *Progress Under the Uniform Child Custody Jurisdiction, and Remaining Problems: Punitive Decrees, Joint Custody, and Excessive Modifications,* 65 Cal.L.Rev. 978, 978–83 (1977). The uniform act establishes standards for determining which jurisdiction should proceed to decide the issue of custody. Its stated purposes are, in part, to

[a]ssure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and the family have the closest connection and where significant evidence concerning the child's care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and the family have a closer connection with another state.

§ 598A.1(3), The Code. In the interstate context, the custody decision itself must be preceded by addressing the issue of subject–matter jurisdiction under the uniform act. We have considered the application of chapter 598A in three cases since its effective date in 1977. *See In re Marriage of Mintle,* 294 N.W.2d 564 (Iowa 1980); *Pierce v. Pierce,* 287 N.W.2d 879 (Iowa 1980); *Barcus v. Barcus,* 278 N.W.2d 646 (Iowa 1979). In all of these cases we have deferred to the jurisdiction of other states. Under the facts of this case, however, we conclude that Iowa is the appropriate state to exercise jurisdiction and, because our review of the evidence leaves us to resolve the issue in a matter inconsistent with Florida's order, we refuse to enforce its provisions.

Before we proceed to the issue of jurisdiction we should make it clear that it is subject matter jurisdiction, not jurisdiction of the person, which we are discussing. *See Smith v. Superior Court,* 68 Cal.App.3d 457, 461, 137 Cal.Rptr. 348, 351 (1st Dist. 1977); Bodenheimer, 65 Cal.L.Rev. at 1000. Submission of a person to jurisdiction of the court, therefore, does not confer jurisdiction under the act. *Id.*

■■■ Whether an Iowa court has jurisdiction to modify an earlier out-of-state decree turns first upon whether that court has lost or declined its pre-existing jurisdiction. If it has, it must then be determined whether Iowa satisfies the jurisdictional requirements of the statute. *See* §§ 598A.13 .14, The Code; *Pierce v. Pierce,* 287 N.W.2d at 883; Bodenheimer, 22 Vand. L.Rev. at 1236. Foreign decrees are presumed to be valid, and in the present case Chareen bears the burden to prove the absence of jurisdiction. *See Hetherington v. Roe,* 239 Iowa 1354, 1359, 35 N.W.2d 14, 17 (1948).

A. *Florida's jurisdiction.* The Florida court entered the first custody order in 1968 when it entered a decree of divorce, then modified it in 1978 by granting custody to Kemper. Both orders thus preceded Iowa's involvement. Under section 598A.13, we are required to recognize and enforce Florida's modification order if that state had "assumed jurisdiction under statutory provisions substantially in accordance with [chapter 598A] ...." Whether Florida's court had assumed jurisdiction in accordance with our law requires an examination of section 598A.3, which provides:

1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child-custody determination by initial or modification decree if:

a. This state is the home state of the child at the time of commencement of the proceeding, or had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of removal or retention by a person claiming custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

*b.* It is in the best interest of the child that a court of this state assume jurisdiction because the child and the child's parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships . . . .

Thus, Florida had jurisdiction to modify the custody provision if (a) it was William's "home state" at the time the proceeding was commenced or within the preceding six months, or (b) William's "best interest" required an assumption of jurisdiction because of his and at least one parent's "significant connection" with Florida.

We first address the "home state" basis of Florida's jurisdiction. "Home state" is defined in section 598A.2(5) as

the state in which the child, immediately preceding the time involved, lived with the child's parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six‑month or other period.

We have held that in determining whether an earlier court does "not now" have jurisdiction, the "now" refers to the time of the filing of the petition for modification. *Pierce v. Pierce,* 287 N.W.2d 879, 882 (Iowa 1980). The father contends that time was 1975, when his initial modification was filed and that, because William and both of his parents resided in Florida at that time, Florida was William's home state. The mother argues that the proceedings were commenced in 1978 when the father counter–petitioned for custody in response to her URESA action for support and that in 1978, Florida was not William's "home state" because he had not resided there since 1975.

There is no clear‑cut answer to this jurisdictional problem; however, we are guided in our decision by the general principles set forth in chapter 598A. *See* § 598A.1, The Code. First, interpretation of the uniform act, and its application, should be tempered by its overall purposes. *See* Bodenheimer, 65 Cal.L.Rev. at 1009. One purpose of the jurisdictional provisions of the act is to emphasize "maximum, rather than minimum contact with the state." 9 U.L.A., *Child Custody Jurisdiction Act,* § 3, Commissioners' Note at 124 (1979). This advances the best interests of the child because "the forum has optimum access to relevant evidence about the child and his family." *Id.* Second, we believe there must be reasonable time limits imposed for exercise of the initial court's modification. In other contexts, we have held that a party's right to rely upon preemptive jurisdiction may be lost by inaction. *See, e. g., Burd v. Board of Education of Audubon County,* 260 Iowa 846, 856, 151 N.W.2d 457, 463 (1967) ("In reorganization proceedings, as in annexation or other proceedings, prompt action, reasonable dispatch and due diligence to complete the undertaking appeared to be reasonable requirements to retain jurisdiction [to the exclusion of other proceedings]."). *Accord, Davies v. Monona County Board of Education,* 257 Iowa 985, 990, 135 N.W.2d 663, 665 (1965); *In re Incorporation of Village of Brown Deer,* 267 Wis. 481, 483‑84, 66 N.W.2d 333, 335 (1954).

The draftsmen of the uniform act clearly envisioned an abandonment principle in the application of section 14 (§ 598A.14, The Code):

[I]f the father [was awarded custody in state 1 and he] continued to live in state 1, but let his wife keep the children for several years [in state 2] without asserting his custody rights and without visits of the children in state 1, modification jurisdiction of state 1 would cease. . . . The situation would be different if the children had been abducted and their whereabouts could not be discovered by the legal custodian for several years.

9 U.L.A., *Child Custody Jurisdiction Act* § 14, Commissioners' Note at 154 (1979) (citation omitted).

■ The facts in this case support a finding that the father had abandoned the 1975 proceedings: He filed a new petition for modification in 1978, rather than relying upon the earlier one, and asked for the first time that the court assert jurisdiction under the newly–enacted uniform act. His 1978 petition alleged, in part, that "Petitioner has not participated as a party or witness in any other litigation concerning custody and *there is no other custody proceeding pending in this state or any other state . . . ."* (Emphasis added.)

We conclude that the 1975 proceedings were no longer a viable means of asserting subject–matter jurisdiction in 1978. The father's claim that he had not abandoned the proceedings, discussed in the following division, is not supported by the evidence.

Under the facts of this case we believe it is inappropriate to accord "home state" status to Florida as of 1978. Moreover, the jurisdictional deficiency of the Florida court was not cured by its consolidation of the more recent litigation with those proceedings instituted in 1975. While it might appear a beneficent gesture of interstate cooperation to recognize Florida's jurisdiction as the home state of William, it would in fact be antithetical to the very purpose of the uniform act: Enforcement would subvert the goal of maximum rather than minimum contacts and would allow a state with virtually no contact with the child within the preceding three years and with minimal access to the information necessary for an informed decision to resolve the custody issue. We conclude Florida was not William's home state for purposes of determining its jurisdiction.

Besides the "home state" basis of jurisdiction, a court may assume jurisdiction in the "best interest" of the child where the child, and at least one parent, have a "significant connection" with the state and there is available in that state "substantial evidence concerning the child's present or future care, protection, training, and personal relationships . . . ." § 598A.3(1)(b), The Code. William had not lived in Florida for three years, and the nexus between him and the state of Florida falls short of the "significant connection" required for the Florida court to assume jurisdiction under that alternative.

We conclude that Florida did not have jurisdiction "under statutory provisions substantially in accordance with" our statute; nor was the modification order "made under factual circumstances meeting the jurisdictional standards" of our law. We thus are not bound to give deference to the Florida court's order despite its initial jurisdiction to determine custody. § 598A.13, The Code. Other possible basis for jurisdiction under the uniform act, including those based upon emergency, are not relied upon and are inapplicable under the facts. We must then proceed, after the following discussion of Chareen's removal of the child, to determine whether the Iowa district court had jurisdiction to make a custody determination.

B. *Removal of the child.* While the 1975 proceedings for modification were pending, Chareen, in violation of a court order, left Florida with William. This raises two related issues: Kemper's claimed diligence in pursuing the 1975 modification proceeding, and the "clean hands" principle as it affects Chareen's right to retain custody.

■ Kemper contends he did not abandon his 1975 modification petition, but that he was thwarted in his efforts by Chareen's removal of the child from the state of Florida. However, the evidence shows no intent by Chareen to hide her whereabouts. A forwarding address was left at the Florida post office and Chareen's mother, with whom Kemper had contact, knew her address. She testified Kemper made no attempt to learn the whereabouts of Chareen or William. It is apparent from the record that, if there were a reason for the 1975 modification proceeding to languish in the Florida court until 1978, it was not the secretion of the child as claimed.

■ A related issue should be discussed. Section 598A.8(1) embodies the "clean hands" principle applied by some

courts: If a parent has wrongfully taken the child from another state the court "may decline to exercise jurisdiction if this is just and proper under the circumstances." Even assuming the mother acted improperly, the father was required to bring the issue to a conclusion with some degree of promptness and he did not. Further, a punitive decree, issued in response to a custodial parent's flight with the child from a jurisdiction, is not favored unless it is "just and proper under the circumstances." *Id.* It would not be here. *See Barcus v. Barcus*, 278 N.W.2d 646, 650 (Iowa 1979) ("clean hands" principle should not be followed if doing so would jeopardize the best interests of the child); *In re Marriage of Gutermuth*, 246 N.W.2d 272, 275 (Iowa 1976) (custody award not to punish or reward a parent).

 C. *Iowa's jurisdiction.* Habeas corpus proceedings may be used as the vehicle for implementing the uniform act in disputed custody proceedings. Accordingly, our threshold question is whether Iowa may assert its jurisdiction either as the "home state" of the child or based upon his "best interests." § 598A.3(1)(a), (b), The Code. William had been in the sole custody of his mother since the 1968 Florida divorce; she and the child had lived in Iowa continuously since 1975, except for his brief visit to Florida in August, 1978. Clearly, Iowa qualifies as William's home state as of the commencement of the Iowa custody action, and therefore the Iowa district court had jurisdiction to determine the custody issue.

II. *The custody decision.* Having addressed, and rejected, Kemper's claim of preemptive jurisdiction of the Florida court, and concluding the Iowa court had jurisdiction under chapter 598A to modify the Florida order, we address the merits of the case. We believe the district court correctly decided the matter which lies at the heart of all of this controversy: Who should have the custody of William? Our review of this issue is de novo. *Sampson v. Sampson*, 189 N.W.2d 614, 614 (Iowa 1971).

 We conclude the district court correctly ordered that custody remain in William's mother. First, and perhaps most sig-

nificant, he had been in the exclusive custody of his mother for the last ten years preceding the hearing. His mother had remarried in 1975 to her present husband. Both the mother and stepfather were steadily employed. William's home was also shared by two half–sisters, Jennifer McDermid, age six, and Adrian Valentine, who was born about two months before the hearing. There is considerable evidence that he is adequately cared for by his mother and stepfather.

 There is also considerable evidence that the father was capable of furnishing a good home, and our discussion is not intended to cast any doubts upon his ability to care for William. A parent seeking modification of custody, though, must show more than the ability to care for the child as well as the custodial parent; a superior claim of ability to minister the child's well–being must be demonstrated. *In re Marriage of Gutermuth*, 246 N.W.2d 272, 274 (Iowa 1976). It is true that William has expressed a desire to live with his father. However, while these wishes should be considered, they are not to be accorded great weight, especially in a proceeding to modify as opposed to an initial custody determination. *See In re Marriage of Woodward*, 228 N.W.2d 74, 76 (Iowa 1975); *Herron v. Herron*, 258 Iowa 1052, 1059, 141 N.W.2d 562, 566 (1966).

We conclude that the best interest of the child, which is always the primary consideration, would be best served if custody remains in his mother.

III. *Cross–appeal.* Chareen has cross–appealed contending the district court erred in concluding that "[i]f the Florida court otherwise had jurisdiction of the custody matter, joining it with the URESA action [chapter 252A, The Code 1977] would not remove that jurisdiction even if the consolidation was erroneous." As we have already discussed, the issue is one of subject-matter jurisdiction, not conferrable upon the Florida court by Chareen's participation in either the URESA or modification proceedings. And, because any subject–matter jurisdic-

tion of the Florida court acquired in 1975 had been lost as of 1978, joining the 1978 proceedings with them was of no effect. Therefore, while we have serious doubts as to the validity of joining custody and URE-SA cases, *see Register v. Kandlbinder*, 134 Ga.App. 754, 754–55, 216 S.E.2d 647, 648 (1975), that issue need not be resolved; the Florida court lacked subject–matter jurisdiction even if the joinder were proper.

IV. *Support and visitation issues.* The Iowa district court, while expressing some doubt as to its authority to order increased support, nevertheless asserted such authority and increased the child support order in the 1968 Florida decree. The issue of support was not raised in the district court; and in any event, the uniform act may not be used as a vehicle to obtain a support order. § 598A.2, The Code ("custody determination" does not include a decision relating to child support or any other monetary obligation of any party). We believe that the district court erred in asserting its jurisdiction as to the support provisions of the Florida decree, and accordingly modify the order to omit its modification of child support.

Rights of visitation, on the other hand, may be resolved under uniform act proceedings. § 598A.2(2), The Code. The district court ordered that jurisdiction be retained to make appropriate visitation orders. We conclude that, at this time, the visitation provisions of the original decree, "reasonable visitation rights in the husband to be liberally construed," should be continued. The district court's order is accordingly modified.

We affirm the district court insofar as it ordered custody to remain in the mother, Chareen E. Valentine. We modify the order by striking the modification of child support and to continue visitation rights as originally provided in the Florida decree. These rulings as to support and visitation shall not, of course, prejudice the right of either party to raise those issues in appropriate future proceedings.

AFFIRMED IN PART; MODIFIED IN PART.